IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

| | | |
|---|---|---|
| Richard Deas, #332943 | ) | C/A No. 5:15-02343-PMD-KDW |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | |
| | ) | REPORT AND RECOMMENDATION |
| | ) | |
| C. Reynolds, Warden, | ) | |
| | ) | |
| Respondent. | ) | |
| | ) | |

Petitioner Richard Deas ("Petitioner") is a state prisoner who filed this pro se petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. This matter is before the court pursuant to 28 U.S.C. § 636(b)(1)(B), and Local Civil Rule 73.02(B)(2)(c) DSC, for a Report and Recommendation on Respondent's Return and Motion for Summary Judgment. ECF Nos. 25, 26. On November 3, 2015, pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), the court advised Petitioner of the Summary Judgment Motion, dismissal procedures, and the possible consequences if he failed to respond adequately to Respondent's Motion. ECF No. 27. On January 20, 2016, Petitioner filed a Response in Opposition to Respondent's Motion for Summary Judgment. ECF No. 36. Having carefully considered the parties' submissions and the record in this case, the undersigned recommends that Respondent's Motion for Summary Judgment, ECF No. 25, **be granted**.

I.      Background

Petitioner is currently incarcerated in the Lee Correctional Institution ("LCI") of South Carolina Department of Corrections ("SCDC"). ECF No. 1 at 1. In 2003, Petitioner was indicted at the April term of the Charleston County Grand Jury for murder (2008-GS-10-3339) and

possession of a firearm during the commission of a crime of violence (2008-GS-10-3340). App. 883-88.[1] Assistant Public Defenders Mary Ford and Andrew Grimes represented Petitioner in a jury trial that convened from January 26-30, 2009, and Assistant Solicitors Jennifer Shealy and Christopher Neely represented the State. App. 1. Petitioner was tried before the Honorable Deadra L. Jefferson. *Id.* After the trial, the jury found Petitioner guilty of all charges. App. 714-15. Judge Jefferson sentenced Petitioner to 40-years imprisonment for the murder conviction and five-years imprisonment for the possession of a firearm conviction. App. 728. Judge Jefferson ordered the sentences run concurrently.

Chief Appellate Defender Robert M. Dudek represented Petitioner on appeal and briefed the following issue:

> The trial court erred by admitting a taped conversation of appellant from the county jail wherein he stated the seized gun was not the murder weapon since this was not relevant, and it was unduly prejudicial pursuant to Rule 403, SCRE especially where the state admitted it wanted this evidence before the jury so it could infer that appellant knew the seized gun was not the murder weapon because he knew where the murder weapon was located since this highly prejudicial evidence had the very real tendency to mislead and confuse the jury.

App. 730-745. Assistant Attorney General J. Anthony Mabry filed a Response Brief on behalf of the State. 746-81. On November 21, 2012, the South Carolina Court of Appeals affirmed Petitioner's convictions and sentences in an unpublished opinion. App. 782-84. On December 7, 2012, the South Carolina Court of Appeals issued a Remittitur. App. 785.

II.    Procedural History

---

[1] Citations to "App." refer to the Appendix for Petitioner's trial transcript, appeal from his sentence and conviction, and his claim for collateral relief in the state courts of South Carolina. That Appendix is available at ECF Nos. 26-1 and 26-2 in this habeas matter.

2

Petitioner filed an application for Post-Conviction Relief ("PCR") on April 22, 2013 (2013-CP-10-2306). App. 786-92. Petitioner asserted the following allegations, recited verbatim, regarding his claims:

> a) Ineffective assistance of trial counsel.
> b) Ineffective assistance of appellate counsel.

App. 788. Petitioner asserted the following facts in support of his claims:

> a) Failure to conduct an independent investigation and review evidence with Applicant.
> b) Failure to advise Applicant regarding possible defenses.
> c) Failure to utilize defense witnesses.

*Id.* A Return was filed on behalf of the State on December 5, 2013. App. 793-97. A PCR hearing convened on April 17, 2014, before the Honorable R. Markley Dennis. App. 799-866. Petitioner was present and represented by Attorney Rodney Davis; Assistant Attorney General Ashleigh R. Wilson appeared on behalf of the State. *Id.* Petitioner and trial counsel testified as witnesses during Petitioner's PCR hearing. *Id.* In an Order filed July 16, 2014, the PCR court denied Petitioner's PCR Application in full, making the following findings of fact and conclusions of law:

## ALLEGATIONS

In his application, the Applicant alleges he is being held in custody unlawfully for the following reasons:

1. Ineffective assistance of counsel.
   a. Failure to conduct an independent investigation and review evidence with Applicant.
   b. Failure to advise Applicant regarding possible defenses.
   c. Failure to utilize defense witnesses.
2. Ineffective assistance of appellate counsel.

At the hearing, Applicant proceeding solely on the following allegations of ineffective assistance of trial counsel and appellate counsel:

1. Ineffective assistance of trial counsel.
   a. Failure to investigate crime scene or question witnesses.

3

    b. Failure to investigate or present an alibi witness.
    c. Failure to request a mistrial or object to early jury deliberation when the jury asked about receiving a copy of the trial transcript during trial.
    d. Failure to request a mistrial or have the court properly question a juror who was related to the victim.
    e. Failure to obtain the written transcript of the jail tapes and share with the Applicant.
    f. Failure to call an expert witness on identifications.

2. Ineffective assistance of appellate counsel.
    a. Failure to raise the issue of a juror being related to the victim's family on appeal.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

This Court has had the opportunity to review the record in its entirety and has heard the testimony and arguments presented at the PCR hearing. This Court has further had the opportunity to observe each witness who testified at the hearing, and to closely pass upon their credibility. This Court has weighed the testimony accordingly.

Set forth below are the relevant findings of fact and conclusions of law as required by S.C. Code Ann. Sec. 17-27-80 (2003).

## Summary of the Testimony

The Applicant was present at the hearing and testified he was convicted of murder and possession of a weapon during the commission of a violent crime. The Applicant testified he was represented by Mary Ford and Andrew Grimes at trial and by Robert Dudek on appeal. The Applicant testified he met with Ford frequently and met Grimes the week of trial. He testified he reviewed the discovery materials with counsel and did not recall discussing possible defenses with counsel.

The Applicant testified Ford did not properly investigate his case. He testified Ford did not go to the crime scene to check the visibility of the scene at night. He testified she never provided him with any information about her investigation of the scene. The Applicant also testified trial counsel did not investigate his alibi witnesses. He testified counsel did not discuss an alibi defense with him and she told him he had no defense. The Applicant testified he did not discuss investigating Sandra Green or Tiana Lee with trial counsel. He testified he wanted to call Lee because she would have testified he was with her the night of the murder.

The Applicant testified two witnesses identified him as the shooter. He testified the witnesses were brought to the police by the victim's father. The Applicant

4

testified counsel never questioned the witnesses about how they came to speak with police. He testified further counsel did not question Shrod Young about his bias.

The Applicant testified counsel also did not get transcripts of his recorded jail phone conversations. He testified he made a statement about police not having the murder weapons during a jail phone conversation. He testified he did not have the call transcripts until after trial. He testified that if he had the call transcripts prior to trial he would have felt more comfortable taking the stand to testify at trial.

The Applicant testified his blood sample was submitted for DNA testing and found not to match any evidence. The Applicant testified the SLED DNA person was not present to testify at trial. He testified counsel failed to present evidence that his DNA did not match at trial.

He testified the jury asked the court about receiving a copy of the trial transcript during trial. The Applicant testified counsel did not object to this request as early deliberation by the jury. He testified further a juror was excused because he was related to the victim. The Applicant testified counsel did not have the juror properly questioned and did not question the juror one on one. The Applicant testified counsel should have asked for a mistrial based on these juror issues.

Lastly, the Applicant testified he wanted appellate counsel to argue on appeal the issue with the juror being related to the victim. He testified appellate counsel told him he felt comfortable with the arguments he presented in his brief.

Also present was Mary Ford, Esquire. Counsel testified she has been practicing law as a public defender for over eight years. She testified she was appointed to represent the Applicant shortly after his arrest in October 2007. Counsel testified her notes reflect she met with the Applicant at least twelve times prior to trial. Counsel testified she filed <u>Brady</u> and Rule 5 motions on the Applicant's behalf and reviewed the materials received with the Applicant in detail.

Counsel testified she discussed with the Applicant the elements of the charges he was facing and what the State had to prove. She testified she discussed with the Applicant his version of the facts and he gave her Dixon, Lee, and Williams as potential witnesses. Counsel testified the Applicant spoke with police after arrest and told them he was with his girlfriend Shanique Williams the night of the murder and that he was with Lee and Dixon prior to that. Counsel testified they discussed presenting an alibi defense at trial. She testified she spoke with Lee and Dixon who said the Applicant was with them, but left at some point and they were unsure when he left. Counsel testified she spoke with Williams who confirmed her statement to police. Counsel testified the Applicant was unaccounted for at the time of the murder and did not have a solid alibi to present at trial.

Counsel testified there was no evidence of self-defense in the Applicant's case and their strategy was to attack the credibility of the State's witnesses. She testified the evidence included two eyewitnesses Miles and Young. She testified Miles identified the Applicant in a photo line-up and Young identified the Applicant after being charged with obstruction of justice. Counsel testified during her investigation Miles and Young would not speak with her.

Counsel testified she used an investigator to visit the scene and track down Dixon and Lee. She testified she spoke with the Applicant's sister, Dixon, and Lee. She testified she reviewed the evidence and went to the scene during the day time and drove by the scene at night. Counsel testified she did not speak with Sandra Green, the victim's aunt, during her investigation because Green was not an actual witness to the murder. Counsel testified she did not give her investigator's reports to the Applicant.

Counsel testified she had ample time to prepare for trial and Andrew Grimes, Esquire, sat second chair with her during the Applicant's trial. She testified she recalled a juror being excused during trial because he was related to the victim. She testified the foreperson was also questioned by the Court about whether or not the excused juror had spoken to any other jurors. Counsel testified she also recalled the jury asking about access to the trial transcript during trial. Counsel testified she asked the Court to poll the jury on whether or not they had begun deliberations, but the Court refused her request. Counsel testified she did not have a basis to move for a mistrial on either jury issue.

Counsel testified she adequately cross-examined the two eyewitnesses at trial on their inconsistent statements. She testified she was able to elicit from Young that he told police whatever they wanted to hear because he wanted a low bond. She testified she also argued to the jury that Miles and Young were trying to cover for someone else based on their two different stories. Counsel testified she knew that the two eyewitnesses had been brought to police by the victim's father. She testified she brought this fact to the jury's attention in closing and argued Miles told the victim's father he did not know who the shooter was to challenge Miles' credibility. She testified this fact was also elicited by the State on direct examination of the eyewitnesses. Counsel testified further that she did not consider obtaining an identification expert. She testified both witnesses said they knew the Applicant prior to the incident and she was able to challenge the testimony of both Miles and Young without an identification expert. Counsel testified she did not object to the witness' in-court identification of the Applicant.

Counsel testified the evidence indicated an unidentified person's DNA was found under the victim's nails. Counsel testified she agreed to allow Officer Osbourne to testify about the DNA results and did not require the State call a SLED DNA witness. She testified she felt Osbourne's testimony at trial was sufficient to show the Applicant's DNA was not under the victim's nails and she did not feel a SLED DNA witness was necessary.

Counsel testified she received a copy of the jail tapes the January before trial. She testified she had a law clerk review the tapes and the State directed her to specific calls. She testified she had enough time to review the tapes to address any issues raised by the State. Counsel testified she did not have a transcript of the jail tapes until shortly before trial. She also testified she doesn't recall if she played the tapes for the Applicant, but they discussed the tapes prior to trial.

Counsel testified a transcript of the jail tapes was given to the Court during trial as a guide and she was unable to get a copy of the transcript to the Applicant prior to trial. Counsel testified she argued to the jury that the Applicant's statement on the jail tapes about the police not having the murder weapon was true. She testified she was able to keep out the fact that the Applicant was arrested with a gun and explained to the Applicant she did not think it was worth putting up testimony about him having a gun at arrest.

Counsel testified she discussed with the Applicant his right to testify. She testified she advised the Applicant not to take the stand because he did not have a different story to give to the jury. She testified she was concerned about the statements already given by the Applicant. She testified she was also concerned that the Applicant's low-key demeanor might be received negatively by the jury.

### Ineffective Assistance of Trial Counsel

The Applicant alleges that he received ineffective assistance of trial counsel. In a post-conviction relief action, the applicant has the burden of proving the allegations in the application. Rule 71.1(e), SCRCP; Butler v. State, 286 S.C. 441, 334 S.E.2d 813 (1985). Where ineffective assistance of counsel is alleged as a ground for relief, the applicant must prove that "counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied upon as having produced a just result." Strickland v. Washington, 446 U.S. 668 (1984); Butler, 286 S.C. 441, 334 S.E.2d 813.

The proper measure of performance is whether the attorney provided representation within the range of competence required in criminal cases. The courts presume that counsel rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment. Strickland, 466 U.S. 668. The applicant must overcome this presumption in order to receive relief. Cherry v. State, 300 S.C. 115, 386 S.E.2d 624 (1989).

Courts use a two-pronged test to evaluate allegations of ineffective assistance of counsel. First, the applicant must prove that counsel's performance was deficient. Under this prong, attorney performance is measured by its "reasonableness under professional norms." Id. at 117, 386 S.E.2d at 625 (citing Strickland, 466 U.S. 668). Second, counsel's deficient performance must have prejudiced the applicant such that "there is a reasonable probability that, but for counsel's unprofessional

errors, the result of the proceeding would have been different." Id. A reasonable probability is a probability sufficient to undermine confidence in the outcome of the trial. Johnson v. State, 325 S.C. 182, 480 S.E.2d 733 (1997).

Regarding the Applicant's claims of ineffective assistance of counsel, this Court finds the Applicant has failed to meet his burden of proof. This Court finds counsel provided credible testimony while finding the Applicant's testimony was less than credible. This Court finds Applicant's attorney demonstrated the normal degree of skill, knowledge, professional judgment, and representation that are expected of an attorney who practices criminal law in South Carolina. State v. Pendergrass, 270 S.C. 1, 239 S.E.2d 750 (1977); Strickland, 466 U.S. at 668; Butler, 386 S.C. 441, 334 S.E.2d 813. This Court further finds counsel adequately conferred with the Applicant, conducted a proper investigation, and provided thorough representation. This Court finds that counsel's representation did not fall below an objective standard of reasonableness.

The Applicant alleges counsel was ineffective for failing to investigate. The Applicant claims counsel did not go to the scene of the murder and did not investigate how the State's witnesses became known to police. This Court finds this allegation is without merit and counsel adequately investigated the facts of the Applicant's case. "[C]riminal defense attorneys have a duty to undertake a reasonable investigation, which at a minimum includes interviewing potential witnesses and making an independent investigation of the facts and circumstances of the case." Walker v. State, 397 S.C. 226, 235, 723 S.E.2d 610, 615 (Ct. App. 2012). Failure to conduct an independent investigation does not constitute ineffective assistance of counsel when the allegation is supported only by mere speculation as to result. Porter v. State, 368 S.C. 378, 385-86, 629 S.E.2d 353, 357 (2006) (citing Moorehead v. State, 329 S.C. 329, 334, 496 S.E.2d 415, 417 (1998)). In any ineffectiveness case, a particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments." Wiggins v. Smith, 539 U.S. 510, 521-22 (2003).

This Court finds counsel gave credible testimony that she visited the scene of the murder during the daytime and at night. This Court also finds counsel was aware that the State's two eyewitnesses became known to police after speaking with the victim's father. Counsel gave credible testimony that she knew prior to trial that the victim's father had encouraged Shrod Young and Shoreka Miles to speak with police about what they saw the night of the murder. The record reflects the State elicited testimony from both Young and Miles about speaking to the victim's father before giving statements to police. (T. 248:8-250:4, 310:22-314:10).

After this testimony was elicited by the State, the record reflects counsel was able to impeach Miles with her multiple inconsistent statements to the victim's father and police and elicit testimony from Young that the victim's father had pleaded with him to help him by naming his son's murderer. (T. 262:20-262:10, 319:3-

8

320:1). This Court finds counsel used the victim's father's involvement in the case to the Applicant's benefit at trial. This Court also finds the Applicant has failed to show what any additional investigation in his case by counsel would have yielded. This Court finds the Applicant has failed to carry his burden of proving counsel's performance was deficient and affected the outcome of his proceedings.

The Applicant alleges counsel was ineffective for failure to investigate or call an alibi witness at trial. This Court finds this allegation is without merit and counsel adequately investigated the Applicant's alibi and discussed the alibi defense with the Applicant. To qualify as an alibi, a witness's testimony must account for the defendant's whereabouts during the time of the crime such that it would have been physically impossible for the defendant to commit the crime. Walker v. State, 397 S.C. 226, 723 S.E.2d 610, 616 (Ct. App. 2012). In order to support a claim that trial counsel was ineffective for failing to interview or call potential alibi witnesses, a PCR applicant must produce the witnesses at the PCR hearing or otherwise introduce the witnesses' testimony in a manner consistent with the rules of evidence. Glover v. State, 318 S.C. 496, 498-99, 458 S.E.2d 538, 540 (1995). The applicant's mere speculation about what the witnesses' testimony would have been cannot, by itself, satisfy the applicant's burden of showing prejudice. Id.

This Court finds counsel provided credible testimony that she investigated the Applicant's two alibi witnesses and discussed the alibi defense with the Applicant prior to trial. Counsel testified after her investigation she concluded the witnesses given to her by the Applicant would not establish a complete alibi. This Court finds the Applicant has failed to carry his burden of proving counsel was deficient. This Court also finds the Applicant has not produced the testimony of any alleged alibi witness to carry his burden of proving prejudice resulted from counsel's decision not to present an alibi witness at trial.

This Applicant alleges counsel was ineffective for failing to object or move for a mistrial after a juror wrote a note to the Court during trial indicating he was related to the victim and one of the State's witnesses. This Court finds the juror was excused by the Court and there was no basis for counsel to object or move for a mistrial. The record reflects the jury foreman sent a note to the Court indicating Juror 137, Elmo Jackson was related to the victim and Shoreka Miles. (T. 285:25-286:7). Jackson told the Court he was closely related to the victim and Leroy and Shoreka Miles and he did not think he could be fair and impartial. (T. 287:15-288:5). Without objection from either the State or the defense, the Court excused the juror based on his representations (T. 288:9-289:10). Counsel for the Applicant expressed concern about the foreman's knowledge of the excused juror's note. (T. 289:13-20). The Court then took extra precaution and inquired of the foreman about whom else the excused juror discussed the note with. (T. 290:8-17). The foreman indicated the excused juror only spoke with him about the note and that he could remain fair and impartial after his conversation with the juror. (T. 290:13-291:22). This Court finds this allegation is without merit and no

further inquiry of the excused juror or foreperson was needed from the Court or the defense. This Court finds the Court properly excused the juror after he represented to the Court his inability to be fair and impartial based on his relationship to the victim. This Court finds the Applicant has failed to carry his burden of proving counsel's performance was deficient or affected the outcome of his proceeding.

The Applicant alleges counsel was ineffective for failing to provide the Applicant a copy of the transcript of his taped jail phone conversations. This Court finds this allegation is without merit. This Court finds the Applicant not having a copy of this transcript did not affect the Applicant's defense or counsel's representation of the Applicant at trial. Counsel provided credible testimony that she was given a copy of the jail tapes and discussed the contents of the tape with the Applicant prior to trial. This Court finds and the record reflects counsel was aware of the substance of the taped conversations and the transcript was only created to aid the trial court. Counsel also testified she received a transcript of the tapes shortly before trial and did not have a chance to provide a copy to the Applicant. This Court does not find credible the Applicant's claim that had he been able to review the transcript prior to trial it would have affected his decision to take the stand to testify during trial. This Court finds the Applicant has failed to carry his burden of proving counsel was deficient and that her performance affected the outcome of his proceeding.

The Applicant alleges counsel was ineffective for failing to call an expert witness to testify about eyewitness identifications at trial. This Court finds this allegation is without merit since the Applicant has failed to present the testimony of an expert witness at his evidentiary hearing. This Court has repeatedly held a PCR applicant must produce the testimony of a favorable witness or otherwise offer the testimony in accordance with the rules of evidence at the PCR hearing in order to establish prejudice from the witness' failure to testify at trial. Bannister v. State, 333 S.C. 298, 303, 509 S.E.2d 807, 809 (1998). The applicant's mere speculation about what the witnesses' testimony would have been cannot, by itself, satisfy the applicant's burden of showing prejudice. Id. This Court will not speculate on the substance of an identification expert's testimony or its effect on the outcome of the Applicant's trial. This Court finds the Applicant has failed to carry his burden of proving counsel was deficient and that but for counsel's performance the result of his proceeding would have been different.

## Ineffective Assistance of Appellate Counsel

The Applicant also alleges ineffective assistance of appellate counsel. A defendant is entitled to effective assistance of appellate counsel. Southerland v. State, 337 S.C. 610, 615, 524 S.E.2d 833, 836 (1999). Although appellate counsel is required to provide effective assistance of counsel, "appellate counsel is *not* required to raise every non-frivolous issue that is presented by the record." Thrift v. State, 302 S.C. 535, 539, 397 S.E.2d 523, 526 (1990) citing Jones v. Barnes,

463 U.S. 745 (1983). "For judges to second-guess reasonable professional judgments and impose on … counsel a duty to raise every "colorable" claim suggested by a client would disserve the very goal of vigorous and effective advocacy…" Jones 463 U.S. at 754.

Generally, in analyzing a claim of ineffective assistance of appellate counsel, the Court applies the Strickland test just as it would when analyzing a claim of ineffective assistance of trial counsel. *See* Southerland v. State, 337 S.C. 610, 616, 524 S.E. 2d 833, 836 (1999). Thus, in this case, we ask 1) whether appellate counsel's performance was deficient, and 2) whether Respondent was prejudiced by appellate counsel's deficient performance. Bennett v. State, 383 S.C. 303, 309, 680 S.E.2d 273, 276 (2009). To prove prejudice, the applicant must show that, but for counsel's errors, there is a reasonable probability he would have prevailed on appeal. Anderson v. State, 354 S.C. 431, 434, 581 S.E.2d 834, 835 (2003).

This Court finds appellate counsel was not ineffective for failing to raise the issue of a juror being related to the victim's family on appeal. This Court finds appellate counsel exercised discretion and raised the issues on appeal that he thought were most meritorious. This Court finds the trial court's excusal of the juror appeared to be proper in light of the juror's representations to the Court and it is unlikely the court's excusal of the juror would entitle the Applicant to reversal on appeal. This Court finds the Applicant has failed to carry his burden of proving appellate counsel's performance was deficient and that he would have prevailed on appeal had counsel raised the issue of the juror being related to the victim's family on appeal.

## **All Other Allegations**

As to any and all allegations that were raised in the application at the hearing in this matter and not specifically addressed in this Order, the Court finds Applicant failed to present any evidence regarding such allegations. Accordingly, this Court finds the Applicant abandoned such allegations. Therefore they are hereby denied and dismissed.

## **CONCLUSION**

Based on all the foregoing, this Court finds and concludes the Applicant has not established any constitutional violations or deprivations before or during his trial, sentencing, and appellate proceedings. Trial and appellate counsel were not deficient and the Applicant was not prejudiced by counsel's representation. Therefore, this PCR application must be denied and dismissed with prejudice.

This Court advises the Applicant that he must file a notice of intent to appeal within thirty (30) days from the receipt of this Order if he wants to secure appropriate appellate review. His attention is directed to Rules 203, 206, and 243 of the South Carolina Appellate Court Rules for the appropriate procedures to follow after notice of intent to appeal has been timely filed.

**IT IS THEREFORE ORDERED:**

1. That the application for post-conviction relief be denied and dismissed with prejudice; and
2. That the Applicant be remanded to the custody of the Respondent.

App. 868-882. Appellate Defender Susan B. Hackett filed a *Johnson*[2] Petition for Writ of Certiorari on Petitioner's behalf. ECF No. 26-3. Therein, Petitioner presented the following issue for review: "Did trial counsel's failure to present evidence of Petitioner's alibi at his murder trial violate Petitioner's Sixth and Fourteenth Amendment rights to the effective assistance of counsel?" *Id.* at 3. Petitioner filed a pro se response to the *Johnson* Petition and raised the following issues:

I.    Whether trial counsel was ineffective for failing to move for a mistrial when juror informed court he was related to victim and witness?
II.   Whether trial counsel was ineffective for waiving right to confrontation when counsel agreed not to call DNA expert?
III.  Whether trial court was ineffective when counsel failed to exclude the witness Mr. Young statement?

ECF No. 26-4. The South Carolina Supreme Court denied the petition, and issued the Remittitur on June 5, 2015. ECF Nos. 26-5, 26-6. This federal habeas Petition followed and was filed on June 10, 2015. ECF No. 1.

III.    Discussion

A.  Federal Habeas Issues

Petitioner raises the following issues in his federal Petition for a Writ of Habeas Corpus, quoted verbatim:

> GROUND ONE: Trial court violated constitutional right to fair trial by admitting phone conversation.
> Supporting Facts: Over counsel objection trial court allowed testimony about phone conversation to be admitted which had a bearing on credibility and was prejudicial as the conversation question my credibility and liability in crime. ECF No. 1 at 5.

---

[2] *See Johnson v. State*, 364 S.E.2d 201 (S.C. 1988).

12

GROUND TWO: Whether trial court was in error for not excusing juror related too victim and witness.

Supporting Facts: After three days of trial, the juror informed court about relationship with the victim and one witness. But the trial court did not question other jurors to make this determination. *Id.* at 7.

GROUND THREE: Ineffective assistance of counsel.

Supporting Facts:   Trial counsel was ineffective when improper character evidence was admitted at trial over counsel objection or with no objection. The evidence only raises a suspicion of guilt and when witnesses are forced too give statement or DNA experts are not called too testify then the trial violates my constitutional rights counsel also failed to object to the statement obtained from witness as unconstitutional and my statement being used to attack credibility. *Id.* at 8.

B.  Standard for Summary Judgment

The court shall grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). The movant bears the initial burden of demonstrating that summary judgment is appropriate; if the movant carries its burden, then the burden shifts to the non-movant to set forth specific facts showing that there is a genuine issue for trial.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).  If a movant asserts that a fact cannot be disputed, it must support that assertion either by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials;" or "showing . . . that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1).

In considering a motion for summary judgment, the evidence of the non-moving party is to be believed and all justifiable inferences must be drawn in favor of the non-moving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). However, "[o]nly disputes over facts

that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Id.* at 248. Further, while the federal court is charged with liberally construing a complaint filed by a pro se litigant to allow the development of a potentially meritorious case, *see, e.g., Cruz v. Beto*, 405 U.S. 319 (1972), the requirement of liberal construction does not mean that the court can ignore a clear failure in the pleadings to allege facts that set forth a federal claim, nor can the court assume the existence of a genuine issue of material fact when none exists. *Weller v. Dep't of Soc. Servs.*, 901 F.2d 387 (4th Cir. 1990).

### C.  Habeas Corpus Standard of Review

#### 1.     Generally

Because Petitioner filed his Petition after the effective date of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), review of his claims is governed by 28 U.S.C. § 2254(d), as amended. *Lindh v. Murphy*, 521 U.S. 320 (1997); *Breard v. Pruett*, 134 F.3d 615 (4th Cir. 1998). Under the AEDPA, federal courts may not grant habeas corpus relief unless the underlying state adjudication: (1) resulted in a decision that was contrary to, or involved an unreasonable application of clearly established federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented at the state court proceeding. 28 U.S.C. § 2254(d)(1)(2); *see Williams v. Taylor*, 529 U.S. 362, 397-98 (2000). "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Id.* at 410.

##### a.   Deference to State Court Decisions

Courts afford deference to state courts' resolutions of the habeas claims of state prisoners. *See Bell v. Cone*, 543 U.S. 447, 455 (2005). The Supreme Court has provided further guidance regarding the deference due to state-court decisions. *Harrington v. Richter*, 562 U.S. 86 (2011); *Cullen v. Pinholster*, 131 S. Ct. 1388 (2011). To obtain habeas relief from a federal court, "a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington*, 562 U.S. at 103. "[E]ven a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id.* at 102. The Court further stated: "If this standard is difficult to meet, that is because it was meant to be." *Id.*; *see Richardson v. Branker*, 668 F.3d 128, 137-44 (4th Cir. 2012) (quoting *Harrington* extensively and reversing district court's grant of writ based on his ineffective assistance of counsel claims).

In interpreting § 2254(d)(1) and discussing the federal courts' role in reviewing legal determinations made by state courts, the United States Supreme Court held as follows:

> [A] federal court may grant a writ of habeas corpus if the relevant state-court decision was either (1) "contrary to . . . [clearly] established Federal law as determined by the Supreme Court of the United States," or (2) "involved an unreasonable application of . . . clearly established Federal law, as determined by the Supreme Court of the United States.

*Williams v. Taylor*, 529 U.S. 362, 404-05 (2000) (quoting from § 2254(d)(1)). "Clearly established Federal law in § 2254(d)(1) refers to the holdings, as opposed to the dicta, of [the Supreme] Court's decisions as of the time of the relevant state-court decision." *Carey v. Musladin*, 549 U.S. 70, 74 (2006) (quoting *Williams*, 529 U.S. at 412). In considering whether a state-court decision is "contrary to" clearly established federal law, the federal court may not grant relief unless the state court arrived at a conclusion opposite to that reached by the Supreme

Court on a legal question, the state court decided the case differently than the Court has on facts that are materially indistinguishable, or if the state court "identifie[d] the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applie[d] that principle to the facts of the prisoner's case." *Williams*, 529 U.S. at 405-13. The "unreasonable application" portion of § 2254(d)(1) "requires the state court decision to be more than incorrect or erroneous[,]" it "must be objectively unreasonable," which is a higher threshold. *Lockyer v. Andrade*, 538 U.S. 63, 75 (2003) (internal citation omitted).

Section 2254(e)(1) requires the federal court give a presumption of correctness to state-court factual determinations and provides that a petitioner can only rebut such a presumption by "clear and convincing evidence." 28 U.S.C. § 2254(e)(1). Accordingly, a habeas petitioner is entitled to relief under § 2254(d)(2), only if he can prove, by clear and convincing evidence, that the state court unreasonably determined the facts in light of the evidence presented in state court.

b.   Ineffective Assistance of Counsel

The Sixth Amendment provides a criminal defendant the right to effective assistance of counsel in a criminal trial and first appeal of right. In *Strickland v. Washington*, 466 U.S. 668 (1984), the Supreme Court announced a two-part test for adjudicating ineffective assistance of counsel claims. First, a petitioner must show that counsel's performance fell below an objective standard of reasonableness under prevailing professional norms. *Id.* at 687. Second, the petitioner must show that this deficiency prejudiced the defense. *Id.* at 694. The United States Supreme Court's 2011 decisions cited previously elaborate on the interplay between *Strickland* and § 2254, noting the standards are "both highly deferential," and "when the two apply in tandem, review is doubly so." *Harrington*, 562 U.S. at 105 (internal quotation marks omitted); *Pinholster*, 131 S. Ct. at 1403.

Further, in *Pinholster*, the Court held for the first time that the federal court's habeas review under § 2254(d)(1) is limited to the record before the state court that adjudicated the claim on the merits. 131 S. Ct. at 1398. The Court explained that "review under § 2254(d)(1) focuses on what a state court knew and did." *Id.* at 1399. In the *Pinholster* case, the district court had conducted an evidentiary hearing and considered new evidence in connection with its review and granting of the petitioner's writ based on a finding of ineffective assistance of counsel. *Id.* at 1397. In an en banc decision, the Ninth Circuit Court of Appeals affirmed the district court's grant of the writ. *Id.* The United States Supreme Court granted certiorari and reversed the Ninth Circuit, finding that the district court should not have considered additional evidence that had not been available to the state courts. 131 S. Ct. at 1398. Because the federal habeas scheme "leaves primary responsibility with the state courts," and "requires that prisoners ordinarily must exhaust state remedies," the Court held that to permit new evidence to be presented in a federal habeas court "would be contrary to that purpose." 131 S. Ct. at 1399 (internal citation and quotation marks omitted).

When a petitioner raises in a § 2254 habeas petition an ineffective-assistance-of-counsel claim that was denied on the merits by a state court, "[t]he pivotal question is whether the state court's application of the *Strickland* standard was unreasonable[,]" not "whether defense counsel's performance fell below *Strickland's* standard." *Harrington*, 562 U.S. at 101. "For purposes of § 2254(d)(1), 'an *unreasonable* application of federal law is different from an *incorrect* application of federal law.'" *Id.* (citing *Williams*, 529 U.S. at 410) (emphasis in original). "A state court must be granted a deference and latitude that are not in operation when the case involves review under the *Strickland* standard itself." *Id.*

    2.       Procedural Bar

Federal law establishes this court's jurisdiction over habeas corpus petitions. 28 U.S.C. § 2254. This statute permits relief when a person "is in custody in violation of the Constitution or laws or treaties of the United States[,]" and requires that a petitioner present his claim to the state's highest court with authority to decide the issue before the federal court will consider the claim. 28 U.S.C. § 2254(a)-(b). The separate but related theories of exhaustion and procedural bypass operate in a similar manner to require that a habeas petitioner first submit his claims for relief to the state courts. A habeas corpus petition filed in this court before the petitioner has appropriately exhausted available state-court remedies or has otherwise bypassed seeking relief in the state courts will be dismissed absent unusual circumstances detailed below.

a.      Exhaustion

Section 2254 contains the requirement of exhausting state-court remedies and provides as follows:

(b)      (1) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court, shall not be granted unless it appears that—

(A)      the applicant has exhausted the remedies available in the courts of the State; or

(B)      (i) there is an absence of available State corrective process; or

(ii) circumstances exist that render such process ineffective to protect the rights of the applicant.

(2) An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State.

(3) A State shall not be deemed to have waived the exhaustion requirement or be estopped from reliance upon the requirement unless the State, through counsel, expressly waives the requirement.

(c)    An applicant shall not be deemed to have exhausted the remedies available in the courts of the State, within the meaning of this section, if he has the right under the law of the State to raise, by any available procedure, the question presented.

The statute requires that, before seeking habeas corpus relief, the petitioner first must exhaust his state court remedies. 28 U.S.C. § 2254(b)(1)(A). "To satisfy the exhaustion requirement, a habeas petitioner must present his claims to the state's highest court." *Matthews v. Evatt*, 105 F.3d 907, 911 (4th Cir. 1997) *overruled on other grounds by U.S. v. Barnette*, 644 F.3d 192 (4th Cir. 2011). Thus, a federal court may consider only those issues that have been properly presented to the highest state courts with jurisdiction to decide them.

In South Carolina, a person in custody has two primary means of attacking the validity of his conviction: (1) through a direct appeal; or (2) by filing an application for PCR. State law requires that all grounds be stated in the direct appeal or PCR application. Rule 203, SCACR; S.C. Code Ann. § 17-27-10, *et seq.*; S.C. Code Ann. § 17-27-90; *Blakeley v. Rabon*, 221 S.E.2d 767, 770 (S.C. 1976).  If the PCR court fails to address a claim as is required by section 17-27-80 of the South Carolina Code, counsel for the applicant must make a motion to alter or amend the judgment pursuant to Rule 59(e), SCRCP. Failure to do so will result in the application of a procedural bar by the South Carolina Supreme Court. *Marlar v. State*, 653 S.E.2d 266, 267 (S.C. 2007). Strict time deadlines govern direct appeals and the filing of a PCR in the South Carolina courts. A PCR must be filed within one year of judgment, or if there is an appeal, within one year of the appellate court decision. S.C. Code Ann. § 17-27-45.

Furthermore, in filing a petition for habeas relief in the federal court, a petitioner may present only those issues that were presented to the South Carolina Supreme Court or the South Carolina Court of Appeals. *See State v. McKennedy*, 559 S.E.2d 850, 853 (S.C. 2002) (holding "that in all appeals from criminal convictions or post-conviction relief matters, a litigant shall not

be required to petition for rehearing and certiorari following an adverse decision of the Court of Appeals in order to be deemed to have exhausted all available state remedies respecting a claim of error") (quoting *In re Exhaustion of State Remedies in Criminal and Post-Conviction Relief Cases*, 471 S.E.2d 454, 454 (S.C. 1990)).

b.     Procedural Bypass

Procedural bypass, sometimes referred to as procedural bar or procedural default, is the doctrine applied when a petitioner who seeks habeas corpus relief as to an issue failed to raise that issue at the appropriate time in state court and has no further means of bringing that issue before the state courts. In such a situation, the person has bypassed his state remedies and, as such, is procedurally barred from raising the issue in his federal habeas petition. Procedural bypass of a constitutional claim in earlier state proceedings forecloses consideration by the federal courts. *See Smith v. Murray*, 477 U.S. 527, 533 (1986). Bypass can occur at any level of the state proceedings if the state has procedural rules that bar its courts from considering claims not raised in a timely fashion.

The South Carolina Supreme Court will refuse to consider claims raised in a second appeal that could have been raised at an earlier time. Further, if a prisoner has failed to file a direct appeal or a PCR and the deadlines for filing have passed, he is barred from proceeding in state court. If the state courts have applied a procedural bar to a claim because of an earlier default in the state courts, the federal court honors that bar.  As the United States Supreme Court explains:

> [state procedural rules promote] not only the accuracy and efficiency of judicial decisions, but also the finality of those decisions, by forcing the defendant to litigate all of his claims together, as quickly after trial as the docket will allow, and while the attention of the appellate court is focused on his case.

*Reed v. Ross*, 468 U.S. 1, 10-11 (1984).

20

However, if a federal habeas petitioner can show both (1) "'cause' for noncompliance with the state rule[,]" and (2) "'actual prejudice resulting from the alleged constitutional violation[,]'" the federal court may consider the claim. *Smith v. Murray*, 477 U.S. at 533 (quoting *Wainwright v. Sykes*, 433 U.S. 72, 84 (1977)). When a petitioner has failed to comply with state procedural requirements and cannot make the required showing of cause and prejudice, the federal courts generally decline to hear the claim. *Murray v. Carrier*, 477 U.S. 478, 496 (1986).

If a federal habeas petitioner has failed to raise a claim in state court and is precluded by state rules from returning to state court to raise the issue, he has procedurally bypassed his opportunity for relief in the state courts and in federal court. A federal court is barred from considering the filed claim (absent a showing of cause and actual prejudice). In such an instance, the exhaustion requirement is technically met and the rules of procedural bar apply. *See Teague v. Lane*, 489 U.S. 288, 297-98 (1989); *Matthews*, 105 F.3d at 915 (citing *Coleman v. Thompson*, 501 U.S. 722, 735 n.1 (1991); *George v. Angelone*, 100 F.3d 353, 363 (4th Cir. 1996)).

3.      Cause and Actual Prejudice

Because the requirement of exhaustion is not jurisdictional, this court may consider claims that have not been presented to the South Carolina Supreme Court in limited circumstances in which a petitioner shows sufficient cause for failure to raise the claim and actual prejudice resulting from the failure, *Coleman*, 501 U.S. at 750, or that a "fundamental miscarriage of justice" has occurred. *Murray v. Carrier*, 477 U.S. at 495–96. A petitioner may prove cause if he can demonstrate ineffective assistance of counsel relating to the default, show an external factor that hindered compliance with the state procedural rule, or demonstrate the novelty of a particular claim. *Id.* Absent a showing of cause, the court is not required to consider

21

actual prejudice. *Turner v. Jabe*, 58 F.3d 924, 931 (4th Cir. 1995). However, if a petitioner demonstrates sufficient cause, he must also show actual prejudice in order to excuse a default. *Murray v. Carrier*, 477 U.S. at 492. To show actual prejudice, the petitioner must demonstrate more than plain error.

IV.     Analysis

A.  Procedurally Barred Grounds

As an initial matter, Respondent maintains Ground One is procedurally barred from habeas review. ECF No. 26 at 28-30. Additionally, Respondent contends all issues or most issues raised in Ground Three are procedurally barred from habeas review. *Id.* at 31-37. The undersigned will address each procedural bar argument in turn.

1. Ground One

Respondent argues that Ground One is procedurally barred because Petitioner did not raise a federal constitutional challenge to the admission of this evidence in state court. *Id.* at 28. Specifically, Respondent maintains that during trial, Petitioner never raised this particular federal constitutional challenge in state court but "challenged the admission of the evidence in state court on the grounds of *relevance* and its prejudicial effect outweighed its probative value *under S.C.R.E., Rule 403*." *Id.* at 29 (emphasis in Return). Additionally, Respondent maintains that Ground One is not cognizable on habeas review because it is a matter of state law. *Id.* at 29-30. Finally, Respondent asserts that "Petitioner is also barred from an evidentiary hearing on this ground because he failed to establish an evidentiary basis for this claim in state court proceedings." *Id.* at 30. Petitioner does not appear to address the procedural bar argument on the merits in his Response Brief. ECF No. 36.

As indicated in the background section of this Report, on appeal, Petitioner argued that the trial court erred in admitting the taped conversation based on relevance and argued it was "unduly prejudicial pursuant to Rule 403, SCRE. . . ." App. 733. Further, Petitioner's appellate brief does not mention that any of his constitutional rights were violated but focuses on whether the evidence at issue was relevant or unduly prejudicial. App. 734-743.

In the case of *Anderson v. Harless,* 459 U.S. 4, 6 (1982), the Supreme Court held that a habeas claim was barred because it was plain from the record that a constitutional argument was never presented to, or considered by, the state court. The Court held that 28 U.S.C. § 2254 "requires a federal habeas petitioner to provide the state courts with a 'fair opportunity' to apply controlling legal principles to the facts bearing upon his constitutional claim." *Id.* (internal citation omitted). Further, the petitioner must have "'fairly presented' to the state courts the 'substance' of his federal habeas corpus claim." *Id.* The Fourth Circuit Court of Appeals cited to the *Anderson* case in considering whether an issue was procedurally barred in *Pethtel v. Ballard,* 617 F.3d 299, 306 (4th Cir. 2010). There, the Fourth Circuit held as follows:

> [A] federal habeas court may consider only those issues which have been 'fairly presented' to the state courts." *Matthews v. Evatt*, 105 F.3d 907, 911 (4th Cir. 1997) (citing *Picard v. Connor*, 404 U.S. 270, 275–78 (1971)). Although the claims presented need not be "identical," see *Ramdass v. Angelone*, 187 F.3d 396, 409 (4th Cir. 1999), the petitioner must present the "'substance' of his federal habeas corpus claim." *Anderson v. Harless*, 459 U.S. 4, 6 (1982) (per curiam). Presenting the "substance" of the claim requires that the claim "be presented face-up and squarely; the federal question must be plainly defined. Oblique references which hint that a theory may be lurking in the woodwork will not turn the trick." *Mallory v. Smith*, 27 F.3d 991, 995 (4th Cir. 1994) (quoting *Martens v. Shannon*, 836 F.2d 715, 717 (1st Cir. 1988)). "In other words, fair presentation contemplates that 'both the operative facts' and the 'controlling legal principles' must be presented to the state court." *Matthews*, 105 F.3d at 911 (quoting *Verdin v. O'Leary*, 972 F.2d 1467, 1474 (7th Cir. 1992)).

*Id.* Therefore, this issue is procedurally barred because Petitioner did not raise any federal constitutional issue at the trial court or state court appellate level. *See e.g., Lopez v. Cartledge,*

No. 4:13-2872-BHH, 2015 WL 5554562, at *17 (D.S.C. Sept. 21, 2015), *appeal dismissed*, No. 15-7653, 2016 WL 1259696 (4th Cir. Mar. 31, 2016); *Johnson v. Mauney*, No. 1:11-1753-RMG-SVH, 2012 WL 2149763, at *7 (D.S.C. May 18, 2012), *report and recommendation adopted*, No. 1:11-1753-RMG, 2012 WL 2154177 (D.S.C. June 13, 2012); *Walker v. Warden of Broad River Corr. Inst.*, No. 1:09-2672, 2010 WL 3701331, at *8 (D.S.C. Sept. 14, 2010).

Concerning Ground One, Petitioner may, nonetheless, overcome procedural defaults and have his claims addressed on the merits, by showing either cause and prejudice for the default, or that a miscarriage of justice would result from the lack of such review. *See Coleman*, 501 U.S. at 750; *Savino v. Murray*, 82 F.3d 593, 602-03 (4th Cir. 1996). The existence of cause ordinarily turns upon a showing of: 1) a denial of effective assistance of counsel, 2) a factor external to the defense which impeded compliance with the state procedural rule, or 3) the novelty of the claim. *Murray*, 477 U.S. at 488. Having reviewed the record, evidence, and the parties' legal memoranda, the undersigned finds that Petitioner has not shown sufficient cause and prejudice to excuse the default of Ground One. Thus, Ground One is procedurally barred from consideration by this court and should be dismissed. *Mazzell v. Evatt*, 88 F.3d 263, 269 (4th Cir. 1996) (finding in order to show prejudice a Petitioner must show that there is a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different); *Rodriguez v. Young*, 906 F.2d 1153, 1159 (7th Cir. 1990) ("Neither cause without prejudice nor prejudice without cause gets a defaulted claim into federal court.").

In order to demonstrate a miscarriage of justice, Petitioner must show he is actually innocent. Actual innocence is defined as factual innocence, not legal innocence. *Bousley v. United States*, 523 U.S. 614, 623 (1998). Petitioner cannot establish that the errors he complains of probably resulted in the conviction of an innocent person. *Schlup v. Delo*, 513 U.S. 298, 327

(1995). In order to pass through the actual-innocence gateway, a petitioner's case must be "truly extraordinary." *Id.* (internal citation omitted). The court's review of the record does not support a showing of any cause and prejudice or actual innocence to excuse the default. Thus, Ground One is procedurally barred from consideration by this court and should be dismissed. The undersigned therefore recommends that the Respondent's Motion for Summary Judgment be granted as to Ground One.[3]

### 2. Ground Three

Respondent maintains that Ground Three is procedurally barred because it is vague and ambiguous, and "[i]t is difficult, if not impossible, for Respondent to tell what improper character evidence Petitioner is referring to in the first sentence of his 'Supporting Facts' as he does not indicate what improper character evidence he is referring to." ECF No. 26 at 31. Further, Respondent represents that Petitioner alleges the improper character evidence was both objected to and not objected to. *Id.* Further, Respondent argues "[t]he PCR court did not address any issue of ineffective assistance of counsel for failure to object properly or not objecting at all to improper character evidence." *Id.* Therefore, it is Respondent's position that the ineffective assistance of counsel argument concerning improper character evidence is procedurally barred. *Id.* at 32. Additionally, Respondent argues that Petitioner's argument concerning the evidence raising only a suspicion of guilt "was waived and abandoned on direct appeal" is procedurally barred. *Id.* at 32-33. Further, Respondent argues that Petitioner's ineffective assistance of counsel grounds concerning failure to object to a witness statement or failure to object to his own

---

[3] The Fourth Circuit has stated that once a claim is determined to be procedurally barred, the court should not consider the issue on its merits. *Kornahrens v. Evatt*, 66 F.3d 1350 (4th Cir. 1995). Accordingly, the undersigned will not discuss the merits of Ground One.

statement are procedurally barred because the PCR court did not address these grounds. *Id.* at 35-36. Petitioner does not respond to Respondent's procedural bar arguments. *See* ECF No. 36.

The undersigned has reviewed the PCR court proceedings and the PCR court's order of dismissal. Based on this review, the undersigned finds no issues in Ground Three were ruled upon by the PCR court. Furthermore, no Ground Three issues were raised in Petitioner's appeal from his PCR dismissal. *See* ECF Nos. 26-3; 26-4. Therefore, Ground Three is procedurally barred from habeas review. *See, e.g. Coleman v. Thompson,* 501 U.S. at 728-29 (issue not properly raised to the state's highest court, and procedurally impossible to raise there now, is procedurally barred from review in federal habeas); *Williams v. Warden*, No. 4:08-2312-SB, 2009 WL 3052487, at *13 (D.S.C. Sept. 23, 2009) (finding that because petitioner "did not properly present this claim to the state's highest court in a procedurally viable manner when he had the opportunity, and the state courts would find any attempt to raise the claim now to be procedurally improper, then the claim is procedurally barred from review in federal habeas corpus").

Further, Petitioner has not shown either cause and prejudice for the default, or that a miscarriage of justice would result from the lack of such review. *See Coleman*, 501 U.S. at 750; *Savino v. Murray*, 82 F.3d at 602-03. Thus, Ground Three is procedurally barred from consideration by this court and should be dismissed. *Mazzell v. Evatt*, 88 F.3d at 269; *Rodriguez v. Young*, 906 F.2d at 1159. Therefore, the undersigned therefore recommends that the Respondent's Motion for Summary Judgment be granted as to Ground Three.[4]

B. Merits Analysis-Ground Two

---

[4] Accordingly, the undersigned will not discuss the merits of Ground Three. *See Kornahrens v. Evatt*, 66 F.3d 1350.

In Ground Two, Petitioner alleges the trial court erred in failing to excuse a juror who was related to the victim and a witness. ECF No. 1 at 7. Petitioner maintains that after three days of trial a juror informed the court that he had a relationship with the victim and with a witness and "the trial court did not question other jurors to make this determination." *Id.* Respondent maintains that Ground Two is meritless because the PCR court determined this Ground lacked merit and that finding is entitled to double deference. ECF No. 26 at 70. Further, Respondent argues the PCR court's finding is supported by the record. *Id.*

During Petitioner's criminal trial, Judge Jefferson received a note from a juror that said only "close kin Leroy Miles, Shoreka Miles." App. 284-87. Upon questioning, the juror stated: "[t]he victim and Leroy and Shoreka are real close family. I don't think I can be partial (sic)." App. 288. Based on the juror's representations, the court dismissed him as a juror and replaced him with an alternate. App. 289-90. After the juror was dismissed, Petitioner's trial counsel wanted to find out whether the juror indicated anything concerning the juror's relationships with any other jurors other than the foreperson. App. 290. Upon questioning, the foreperson told the court that the excused juror had just relayed the information in the note to the foreperson and no one else. App. 291. Further, the foreperson stated that he could remain fair and impartial for Petitioner's trial. App. 292. The State and defense found the trial court's remedy of dismissing only the juror who had written the note acceptable. App. 293. Thereafter, the trial proceeded. App. 293-94.

During Petitioner's PCR hearing, Petitioner testified that he was not satisfied with how trial counsel handled the situation of the excused juror. App. 813. Specifically, Petitioner testified that he thought trial counsel "should have called the jurors up one by one and questioned

them. Like, 'did y'all talk about the case', things like that." *Id.* When trial counsel was questioned about the excused juror, she recalled:

> I wanted the other jurors to be questioned. Judge Jefferson said no. She questioned the foreperson, because that's the person that came to her with the note, to see if there had been any other discussions. He said, 'no, I am the only one he talked to. No, he didn't give me any details.' So, she questioned him.

App. 838. Additionally, trial counsel testified that in her opinion, there was no basis for a mistrial after the judge excused the juror and failed to question the jurors individually. App. 839. Further, trial counsel testified that "it didn't occur to me to ask for a mistrial because at that point I didn't see specifically anything that had been tainted, that I had proof of." App. 839-40.

The Sixth Amendment to the United States Constitution guarantees a defendant the right to effective assistance of counsel in a criminal prosecution. *McMann v. Richardson*, 397 U.S. 759, 771 (1970). In *Strickland v. Washington* the Supreme Court held that to establish ineffective assistance of counsel, a petitioner must show deficient performance and resulting prejudice. 466 U.S. at 687. Counsel renders ineffective assistance when his performance "[falls] below an objective standard of reasonableness," but there is a "strong presumption" that counsel's performance was professionally reasonable. *Id.* at 688-89. Prejudice requires a showing "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694.

Based on the undersigned's review of the trial transcript and PCR transcript, the undersigned finds the PCR court's decision on this ineffective-assistance-of-counsel issue was reasonable. In its Order of Dismissal, the PCR court found there was no basis for trial counsel to move for a mistrial because the juror was excused. App. 878. Additionally, the PCR court noted the trial court questioned the foreperson of the jury to ensure he could remain fair and impartial.

App. 879. Based on these findings, the PCR court determined that Petitioner "failed to carry his burden of proving counsel's performance was deficient or affected the outcome of his proceeding." *Id.*

The undersigned agrees with the PCR court's finding that trial counsel did not err in failing move for a mistrial after the biased juror was excused from the jury and the foreperson was questioned about his impartiality. Furthermore, the undersigned has reviewed the trial transcript and agrees with the PCR court's finding that any perceived error likely had no impact on the outcome of Petitioner's criminal trial. Therefore, the undersigned finds Petitioner has failed to demonstrate either *Strickland* prong, and the PCR court's dismissal of Petitioner's claim of ineffective assistance of counsel was not an unreasonable application of federal law. Accordingly, the undersigned finds that Petitioner has failed to demonstrate that the state court's decision was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. *See* 28 U.S.C. § 2254(d) & (e)(1). As a result, the undersigned finds that Ground Two is without merit and should be dismissed.

V.     Conclusion and Recommendation

Wherefore, based upon the foregoing, the undersigned recommends that Respondent's Motion for Summary Judgment, ECF No. 25, be GRANTED and the Petition be DENIED.

IT IS SO RECOMMENDED.

April 15, 2016                                    Kaymani D. West
Florence, South Carolina                         United States Magistrate Judge


**The parties are directed to note the important information in the attached**
**"Notice of Right to File Objections to Report and Recommendation."**